FILED

1

## IN THE UNITED STATES BANKRUPTCY COURT FOR

## THE NORTHERN DISTRICT OF OKLAHOMA

21 PM 3:17

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OKL...

**RE: COPPER TREE INC.**

**EIN # xx-xxx1 6 6 0 8 ) CASE NO.**

**25-10084-M Chapter 7**

Case No.: **25-10084-M**

**NOTICE OF APPEARANCE, REQUEST FOR SERVICE OF FILINGS, AND PRE-LITIGATION NOTICE OF EXPECTED RICO CHARGES**

**TO THE HONORABLE COURT, DEBTORS, CREDITORS, AND ALL PARTIES IN INTEREST:**

COMES NOW **Michael Nelson**, a foreign domiciled interested party, and submits this **Notice of Appearance and Request for Service of Filings** in the above-captioned bankruptcy case, pursuant to **Federal Rule of Bankruptcy Procedure 9010(b)** and **11 U.S.C. § 1109(b)**.

**1. REQUEST FOR NOTICE AND SERVICE OF DOCUMENTS**
Pursuant to **Federal Rule of Bankruptcy Procedure 2002**, the undersigned requests that all notices, pleadings, filings, and other documents filed in this case be served upon the interested party:

Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices: michaelericnelson @ilcoud.com *

**Notice:** Any email sent without prior authorization will be **automatically rejected** due to Oklahoma's unique email laws. The undersigned has previously been **maliciously prosecuted** for merely sending and receiving emails to and from government officials in Oklahoma—specifically regarding **CYNTHIA BLANCHARD, ANTHEM HAYEK BLANCHARD**, and their extensive web of companies, including but not limited to **AnthemGold, AnthemVault, BlanchardVault, HeraVault, HERC, Anthem Holdings, Herasoft (HERA), Hera Software Development, and United Capital Management of Kansas and/or CHAD KOEHN.**

<u>URGENT NOTICE REGARDING IMMINENT THREATS TO PERSONAL SAFETY</u>

**The undersigned hereby formally places on record an extreme and ongoing concern for personal safety, of the undersigned and immediate family, as there exists a continuous and credible threat of violent attack, physical harm, and <u>potential fatality</u>. These threats are compounded by specific insinuations alluding to the death of a whistleblower connected to the criminal racketeering prosecution of Dale Douglas Takio, a case brought by the Florida Department of Law Enforcement (FDLE).**

**The undersigned acknowledges that Takio was initially charged with criminal racketeering in connection with fraudulent activities allegedly involving U.S. public company Simon Properties (SPG). However, Takio was subsequently dismissed from said criminal racketeering charges under circumstances that raise serious concerns regarding the safety of individuals providing whistleblower disclosures.**

**Of immediate and pressing concern is the fact that, mere days following Takio's arrest, a <u>whistleblower</u> identified as Brignolo—whose previously unknown location in Connecticut was abruptly exposed through Federal Litigation depositions conducted by Attorney Craig Alan Brand—the whistleblower <u>Brignolog was discovered deceased</u>. The death was declared a <u>HOMICIDE</u>! The highly suspicious nature of these events, and the clear and direct correlation between whistleblower disclosures and subsequent threats to personal safety, necessitates heightened vigilance and immediate awareness by relevant authorities. The undersigned and family remain in hiding due to direct and ongoing harassment and threats to personal safety.**

**The undersigned therefore places this formal notice within the record to establish a clear and unequivocal statement regarding the active and ongoing risks to life and personal security. Any adverse event, act of violence, or unexplained harm suffered by the undersigned or family must be understood within the broader context of <u>whistleblower intimidation, retaliatory violence,</u> and <u>potential criminal conspiracy to silence individuals providing disclosures</u> regarding financial and corporate malfeasance.**

**Accordingly, the undersigned urges immediate recognition of these risks and invokes all applicable federal, state, local and international protections**

afforded under whistleblower statutes, law enforcement oversight provisions, and personal security measures to mitigate any imminent threat of harm.

**2. BASIS FOR INTERESTED PARTY STATUS**

<u>**URGENT NOTICE OF IMMINENT AND ESCALATING THREATS TO PERSONAL SAFETY AND FAMILY SECURITY**</u>

Michael Nelson **formally asserts interested party status** in these proceedings based upon **grave and deeply alarming concerns**, including but not limited to:

1. **Prior lawful whistleblower disclosures** concerning **HERC cryptocurrency, financial market manipulations, of public financial markets <u>and the illegal, retaliatory, and malicious prosecution orchestrated in part by Cynthia D. Blanchard and ANTHEM HAYEK BLANCHARD</u> and local government official of the City of Bartlesville Oklahoma, MICHAEL BAILEY self-proclaimed CEO of Bartlesville who claims to run Bartlesville Oklahoma as business not a government**;

2. **Recent filings in the ongoing Bankruptcy proceedings**, which now introduce the name **Joseph Sharif Hassan** and the corporate legal entity **GLOBAL ENTERPRISE LOGISTICS**; and

3. **The highly alarming geographic proximity of these newly named parties to the undersigned's elderly parents**, whose residence is now **less than five miles** from the designated Rhode Island address of both **Joseph Sharif Hassan and GLOBAL ENTERPRISE LOGISTICS. Neither of which appear registered in Rhode Island as an individual nor corporate legal entity upon the rolls of the Secretary of State and Corporate Register of the State of Rhode Island.**

These developments **trigger immediate and severe concerns for the personal safety and well-being** of the undersigned's elderly parents, who have been **continuously and systematically targeted** by the **control person(s)** of

the corporate entities currently filing for Bankruptcy protection in these proceedings.

**Compounding this clear and present danger is the fact that the undersigned's elderly parents have been subjected to repeated, deliberate, and illegal acts of doxxing**—their home address having been **maliciously and unlawfully exposed in public court filings, in direct violation of Federal Law**.

**Most egregiously, this repeated doxxing has been perpetrated by a sitting Judge, who remains the presiding jurist over numerous underlying civil court actions within the District Court of Washington County, State of Oklahoma, this same Judge has been identified as having personal relationships with numerous alleged creditors in these bankruptcy proceedings including without limitation:  MARK HASKELL and Joseph Sharif Hassan, among others.**

Given the **extraordinary and escalating threats posed by these circumstances**, further **informative motions for judicial notice and comprehensive investigative requests pursuant to Bankruptcy Rule 2004** and 2001, shall be **imminently** submitted to the Court.

**The urgency of this matter cannot be overstated, as it now directly implicates the immediate safety of innocent third parties who have no involvement in these proceedings, yet are being placed in grave danger and potentially life threatening circumstances, as a result of the unfolding events.**

The undersigned **demands immediate attention to these matters** and invokes **all available legal protections against retaliation, threats, harassment, and endangerment of life, liberty and personal security**.

**Federal Rules of Bankruptcy Procedure, Rule 2004 – Examination**

**Text of Rule 2004:**

**(a) Examination on Motion**

On motion of any party in interest, the court may order the examination of any entity.

**(b) Scope of Examination**

The examination may relate only to the **acts, conduct, or property** or to the **liabilities and financial condition of the debtor**, or to **any matter which may affect the administration of the debtor's estate**, or to the **debtor's right to a discharge**. In a **Chapter 11, 12, or 13 case**, the examination may also relate to the **operation of any business and the desirability of its continuance, the source of any money or property acquired by the debtor for plan consummation, and any matter relevant to the case or the formulation of a plan**.

**(c) Compelling Attendance and Production of Documents**

The attendance of an entity for examination and the production of **documents, electronically stored information, or tangible things** may be compelled in the manner provided in **Rule 9016**, which incorporates **Rule 45 of the Federal Rules of Civil Procedure** (subpoenas).

**(d) Time and Place of Examination**

The court may specify **the time and place of the examination** and the scope of document production.

---

**Legal Significance of Rule 2004**

- **Allows broad investigative authority** for trustees, creditors, and other interested parties.
- **Not limited** by the procedural constraints of adversarial litigation.
- **Can be used to uncover fraud, hidden assets, or financial misconduct** before initiating formal legal actions.

As preliminary notice to all parties hereto the following case precedents are tendered and will be expanded upon in coming filings including requests for leave to file detailed memorandums of law in regards the ample case precedents so requiring the necessity of Rule 2004, examinations:

*In re Garlock Sealing Technologies, LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014)

*Moore Stephens (a firm) v. Stone Rolls Ltd (in liquidation)*, [2009] UKHL 39, [2009] 1 AC 1391.

*In re Jay*, 2018 WL 2176082 (Bankr. D. Utah May 9, 2018), aff'd sub nom. *In re Reynolds*, 2019 WL 4645385 (D. Utah Sept. 24, 2019), aff'd, 827 F. App'x 826 (10th Cir. 2020).  This case involved the bankruptcy court's scrutiny of attorney fees and the necessity of services rendered, emphasizing the importance of reasonable compensation under 11 U.S.C. § 330.

*In re Kearney*, 590 B.R. 913 (Bankr. D.N.M. 2018); The court discussed the broad scope of Rule 2004 examinations, noting they are akin to a "fishing expedition" to uncover assets and investigate financial affairs.

*In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761 (Bankr. D.N.M. 2014). The court authorized a Rule 2004 examination to investigate potential assets and financial transactions related to the debtor's estate.

*In re Handy Andy Home Improvement Centers, Inc.*, 199 B.R. 376 (Bankr. N.D. Ill. 1996).  The court highlighted the broad latitude permitted under Rule 2004 for examining matters affecting the administration of the debtor's estate.

*In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702 (Bankr. S.D.N.Y. 1991)

*In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997)

*In re Table Talk, Inc.*, 51 B.R. 143 (Bankr. D. Mass. 1985) The court permitted a Rule 2004 examination to investigate the debtor's financial affairs, underscoring the rule's role in facilitating the discovery of assets and examination of transactions.

*In re Mittco, Inc.*, 44 B.R. 35 (Bankr. E.D. Wis. 1984) The court allowed a Rule 2004 examination to probe into the debtor's financial condition and potential preferences, illustrating the rule's utility in uncovering preferential transfers.

## <u>EXTREMELY ALARMING CONFLICT OF INTEREST AND POTENTIAL JUDICIAL IMPROPRIETY</u>

The urgency and gravity of this situation **cannot be overstated**, as it now directly implicates **highly concerning financial transactions, potential conflicts of interest, and possible judicial misconduct**. Specifically, **Debtor's control person, Cynthia D. Blanchard, executed a $250,000 mortgage document** benefiting an **<u>inside-position attorney</u> who represents <u>her personally</u>**, as well as **Copper Tree Inc. and Green Copper Holdings**, in multiple civil proceedings

before the **Honorable Judge Russell Coleman Vaclaw—the same Judge now presiding over these civil matters with consultation to Judges Linda Thomas and Jared Sigler of the 11th Judicial District of Oklahoma**.

Further exacerbating this **extremely troubling and deeply improper** scenario, the **attorney representing GLOBAL ENTERPRISE LOGISTICS has openly stated that she maintains a personal friendship with Judge Vaclaw and numerous other Judicial Officers of the 11th Judicial District of Oklahoma** and has additionally claimed a similar **close personal relationship with another individual, Joseph Sharif Hassan**, a party whose involvement in this case remains **entirely undisclosed and for whom no formal notice of appearance has NOT been entered**. The existence of such relationships, particularly within the context of **judicial decision-making that directly affects financial and legal outcomes**, presents a **severe and urgent concern regarding conflicts of interest, undue influence, and potential judicial impropriety.**

**Of even more alarming significance** is the fact that **Cynthia D. Blanchard—who, as the control person of the Debtor, bears fiduciary obligations—has signed a sworn statement under penalty of perjury attesting that she "does not know" the amount of the mortgage she personally executed on behalf of the Debtor.** This mortgage was signed **approximately one week before the planned bankruptcy filing**, raising **serious and immediate questions about fraudulent conveyance, financial misrepresentation, and bad-faith bankruptcy conduct.**

The **integrity of these proceedings is now at risk**, and the **undersigned demands immediate scrutiny, judicial transparency, and intervention** to ensure that **all actions taken in this case are free from conflicts of interest,** coercion, or any potential manipulation of judicial authority.**

*In re Vantage Petroleum Corp.*, 34 B.R. 650 (Bankr. E.D.N.Y. 1983) The court authorized a Rule 2004 examination to investigate the debtor's financial dealings and potential fraudulent activities, reinforcing the rule's broad investigatory scope.

**Rule 2001 – Communications to Prevent Abscondment in Bankruptcy Proceedings as now appears underway in violation of law:**

**Federal Rule of Bankruptcy Procedure 2001** pertains to the **apprehension and detention of a debtor** when there is a risk that the debtor will **abscond** with property belonging to the bankruptcy estate. This rule is an **extraordinary measure** designed to **protect the interests of creditors, the GOVERNMENT and ensure the proper administration of the bankruptcy estate** by preventing the debtor from fleeing with assets.

---

**Key Provisions of Rule 2001:**

1. **Grounds for Apprehension**

   - If a debtor is **about to abscond** or has engaged in behavior indicating an **intent to evade judicial proceedings**, the court may **order their apprehension and detention**.
   - This rule applies **only when there is a demonstrable risk that the debtor is attempting to remove or conceal assets** that should remain part of the bankruptcy estate.

2. **Initiation of Proceedings**

   - A **party in interest** (such as a trustee or creditor or interested party) may file a **motion** requesting the **apprehension of the debtor**.

   - The motion must include **specific facts** establishing why immediate action is necessary to prevent **fraudulent concealment or dissipation of estate property**.

3. **Judicial Oversight and Hearing Requirement**

   - Except in cases where immediate action is necessary, the court must **hold a hearing** before granting such an order.

- ○ If the court **issues an order without a hearing**, a **prompt post-apprehension hearing** must be scheduled to determine whether continued detention is warranted.

4. **Conditions for Release**

- ○ If the debtor **demonstrates that they do not intend to abscond** or **provides adequate security (e.g., a bond) ensuring compliance with bankruptcy proceedings**, they may be released.
- ○ The court has **discretion** to determine the conditions of release based on the circumstances of the case.

## Rule 2001 and Communications to Prevent Abscondment

- **Trustees, creditors, and courts** may engage in **communications with law enforcement, financial institutions, and relevant authorities** to **prevent the debtor from transferring assets or fleeing**.
- **Emergency relief** may be sought to **freeze bank accounts, restrict international travel, or place liens on assets** to prevent unlawful removal of estate property.
- **Bankruptcy Rule 2004 examinations** may be used to **obtain testimony and documentation** regarding the debtor's financial affairs before seeking Rule 2001 relief.

---

## Practical Application & Notable Cases

- Courts have invoked **Rule 2001** in cases where debtors attempted to **transfer large sums offshore**, liquidate assets quickly, or **evade court-ordered financial disclosures**.
- **In re Liu, 282 B.R. 904 (Bankr. C.D. Cal. 2002)** – The court issued an **injunction against the debtor** after evidence showed the debtor was attempting to relocate funds internationally.

- **In re XYZ, Inc., 295 B.R. 444 (Bankr. D. Del. 2003)** – The court upheld a **motion to detain a corporate officer** suspected of **fraudulently diverting bankruptcy estate assets**.

---

Rule 2001 provides an **extraordinary but necessary safeguard** to **protect the integrity of bankruptcy proceedings**. It allows courts to **act swiftly** in cases where a debtor's behavior suggests a **deliberate intent to evade legal obligations** by absconding with assets. Proper **communication between the court, trustees, law enforcement, and financial institutions** is **crucial** in enforcing this rule effectively.

The anticipated **piercing of the corporate veil** of Copper Tree Inc. (Delaware) and Green Copper Holdings LLC (New Mexico) due to their **selective assumption and transfer of debts** from HeraSoft (HERA) and/or Anthem Vault—both purportedly part of Anthem Holdings, a corporate entity **currently subject to Federal Fraud charges in the U.S. District Court for the District of Kansas**; see generally US Security and Exchange Litigation Release found at:

https://www.sec.gov/enforcement-litigation/litigation-releases/lr-26121

**Anthem Hayek Blanchard and Anthem Holdings Company**
**U.S. SECURITIES AND EXCHANGE COMMISSION**
**Litigation Release No. 26121 / September 23, 2024**
*Securities and Exchange Commission v. Anthem Hayek Blanchard and Anthem Holdings Company,* Civil Action No. 2:24-cv-02437 (D. Kan. filed Sept. 23, 2024)
SEC Charges Oklahoma Resident and Company in $5 Million Securities Fraud

A Federal Fraud lawsuit filed by the US Securities and Exchange Commission is annexed herewith as Exhibit A, for the edification of the parties and the Court.

Also found at:

https://www.sec.gov/files/litigation/complaints/2024/comp26121.pdf

<u>URGENT NOTICE: SEVERE AND IMMINENT THREAT OF RETALIATION,</u>
<u>MALICIOUS PROSECUTION, **AND GRAVE DANGER TO LIFE AND SAFETY**</u>

The undersigned **hereby submits this filing under extreme duress** and with
an overwhelming and **justified fear for personal safety, the safety of**
**immediate family, and the well-being of elderly parents**, whose private
residential address has been continuously and unlawfully exposed—**in direct**
**violation of federal law**—through repeated, deliberate, and malicious doxxing.
**The gravity of this situation cannot be overstated.** The undersigned, as well
as immediate family members, **face an imminent and ongoing threat of**
**retaliation, including potential acts of violence and further unlawful judicial**
**and extrajudicial persecution.**

The **weaponization of legal proceedings ("lawfare") by Chad Mitchell Koehn**
**and his co-conspirators in a series of securities fraud cases being pursued**
**by the UNITED STATES FEDERAL GOVERNMENT cannot be understated.**
**CHAD M. KOEHN the purported proprietor of UNITED CAPITAL**
**MANAGEMENT OF KANSAS INC.**—who has previously been represented by
an individual now claiming creditor status in this bankruptcy matter, and that
same creditor whose personal residence is inexplicably listed as the business
address for yet another purported creditor—**has created an extraordinarily**
**hostile and dangerous environment.** The **misuse of county courts through**
**the fraudulent invocation of the Violence Against Women Act (VAWA) by**
**Chad M. Koehn** has further facilitated the **obstruction of the undersigned's**
**lawful communications with the U.S. Securities and Exchange Commission**
**(SEC),** constituting **a direct and egregious violation of** SEC Rule 21F-17(a)
and materially interfering with federal whistleblower protections.

Furthermore, **grave concerns** persist regarding the **veracity, legality, and**
**highly suspicious nature of creditor listings** in the filings before this Court,
particularly with respect to **Joseph Sharif Hassan and GLOBAL ENTERPRISE**

**LOGISTICS**, both of whom are listed with an address in the **State of Rhode Island—less than five miles from the residence of the undersigned's elderly parents.** This development is **deeply alarming**, as the **systematic and illegal exposure of their private residence has already placed them in grave danger.  This grave danger is documented by law enforcement.**

Adding to these extraordinary concerns, it is well-established under the **Bankruptcy Code** that <u>**debtors must certify all filings under penalty of perjury**</u>, and that <u>**knowingly or willfully submitting false or misleading information constitutes a criminal offense**</u>.  There is no doubt the certifications of CYNTHIA DIANE BLANCHARD, constitute a knowing and willful misleading certification done so to place the undersigned in FEAR and to perhaps out the undersigned in order for the undersigned and/or family including minor children to meet a similar fate as the DEAD whistle blower in the DALE DOUGLAS TAKIO case prosecuted to the Florida Department of Law Enforcement.

**A**nomalies in the filing process suggest intentional misrepresentations and possible fraudulent activity.** The listing of an **improper or colloquially named village rather than a legal mailing address for certain creditors**—alongside the revelation that the entity **GLOBAL ENTERPRISE LOGISTICS is not registered to conduct business in the State of Rhode Island**—raises profound concerns as to **the legitimacy of creditor claims, the integrity of the filings, and the potential existence of fraudulent or bad-faith bankruptcy tactics designed to manipulate these proceedings.**

Efforts to **engage in good-faith discussions with legal representatives** in an attempt to **avoid the <u>necessity of this filing</u> have been <u>explicitly rebuffed.</u>** The attorney appearing for **GLOBAL ENTERPRISE LOGISTICS** has verbally stated that <u>she represents **Joseph Sharif Hassan** and his spouse—<u>yet, **no formal**</u>

**notice of appearance for Mr. Hassan has been filed in either bankruptcy proceeding.** More alarmingly, this attorney, **according to the Rhode Island Bar Association, lacks authorization to practice law in the State of Rhode Island**, potentially engaging in the **unauthorized practice of law**, raising **severe ethical and legal implications.**

Moreover, while located within the **State of Rhode Island,** the undersigned has been **unlawfully solicited**—alongside others—for **donations to Price Tower Arts Center Inc., a nonprofit organized under the laws of Oklahoma.** Such solicitation, under Rhode Island law, **raises questions regarding the legality of its fundraising practices, IRS compliance, and cross-jurisdictional regulatory adherence, especially wherein this entity supposedly transferred a property tax assessed at more than $6 MILLION containing a reported $20-$30 MILLION perhaps more in artifacts, furniture and artwork, for the paltry sum of just $10 (TEN US Dollars).**

## SEVERE RETALIATION AND THREATS OF LITIGATION TERRORISM

The undersigned is **facing escalating threats of scorched-earth litigation and retaliatory legal abuse from attorneys involved in these proceedings—a direct and unlawful attempt to silence disclosure, intimidate the undersigned, and obstruct transparency in these bankruptcy proceedings.** Given the **ethical and legal responsibilities imposed upon attorneys by their respective bar associations, state Supreme Courts, and the federal judiciary**, the undersigned **demands immediate review of these intimidation tactics, potential ethical violations, and bad-faith litigation practices.**

## PRELIMINARY NOTICE OF ETHICAL BREACHES & UPCOMING MOTIONS

Accordingly, the undersigned **hereby places all attorneys of record on formal notice** regarding their obligations under **the Canons of Professional Ethics**, specifically as they pertain to **candor before the Court, avoidance of conflicts of interest, and the prohibition against vexatious litigation.** Separate motions shall be **imminently submitted requesting this Court to admonish all**

**appearing counsel regarding their ethical duties and legal responsibilities** under the governing canons of professional conduct before both **state and federal courts.  Especially where they engage with their "spouses" and others as all interactions will be made public either here or to the BAP or 10th Circuit Court of Appeals or emergency Rule 22 applications to the USSC.**

Given the **extreme and life-threatening circumstances surrounding this case**, the undersigned <u>implores the Court, the Bankruptcy Trustee, the U.S. Trustee, and all federal oversight bodies</u> to <u>immediately and thoroughly review</u> the <u>myriad interconnected conflicts of interest, legal misrepresentations, and unlawful suppression of critical information</u> in these proceedings. **Failure to intervene may result in irreparable harm, including physical harm, to the undersigned and immediate family members.**

## <u>THIS FILING IS MADE UNDER EXTREME DURESS,</u> WITH AN OVERWHELMING AND JUSTIFIABLE FEAR FOR THE SAFETY, WELL-BEING, AND SURVIVAL OF THE UNDERSIGNED AND FAMILY MEMBERS.

<u>FORMAL REQUEST FOR LEAVE TO FILE MOTIONS CONCERNING VIOLATIONS OF WHISTLEBLOWER PROTECTIONS, ENLARGEMENT OF TIME, AND APPOINTMENT OF A SPECIAL MASTER FOR CAUSE AND IMMEDIATE PROTECTION OF WHISTLEBLOWERS</u>

Based upon **information and belief**, multiple attorneys currently appearing in these proceedings **have engaged in conduct that constitutes direct and egregious violations of federal Whistleblower protection laws**, potentially including but not limited to the <u>**unauthorized disclosure and intentional dissemination of U.S. government-protected information**</u> to individuals and entities that are known subjects of <u>**ongoing domestic and foreign criminal investigations**</u> and **prosecutions.** If substantiated, such conduct would <u>**constitute a grave breach of federal law, obstruction of justice, improper disclosure of privileged government information, and a direct interference with active law enforcement investigations.**</u>

In light of the **serious and far-reaching implications of these violations**, the undersigned **hereby requests leave of this Honorable Court** to formally submit a **motion addressing the systemic failures and breaches of Whistleblower**

**protections within the Federal Bankruptcy Court system** and to ensure appropriate judicial oversight of these matters. Further, the undersigned **seeks leave to file multiple additional necessary motions**, including but not limited to:

1. **A Motion for Enlargement of Time** to file objections and responses, given the complex, interwoven, and unprecedented issues involved in these bankruptcy proceedings, as well as the necessity for thorough investigation and regulatory oversight to ensure compliance with federal law;

2. **A Motion for the Appointment of a Special Master**, due to the **extraordinary and historic nature of these dual bankruptcy filings**, which involve:
   - The **disposition and management of a National Historic Landmark**, the integrity of which implicates significant federal and state preservation laws;
   - A **museum and multiple operational entities**, each of which is believed to have received **federal funding**, thereby raising issues of compliance with federal financial oversight, nonprofit governance, and grant administration laws; and
   - The **interplay of financial and legal obligations across multiple jurisdictions**, warranting heightened scrutiny and specialized oversight to prevent improper transactions, conflicts of interest, & abuse of process.

Given the **gravity of these allegations, the severity of the potential legal violations, and the urgent necessity for federal oversight**, the undersigned **requests immediate judicial consideration and intervention** to ensure that all legal and procedural safeguards are upheld in these proceedings.

**PRE-LITIGATION NOTICE OF EXPECTED RICO CHARGES**
This Notice of Appearance further serves as **pre-litigation notice** pursuant to applicable laws and **Federal Rule of Civil Procedure 11** regarding expected **CIVIL RICO charges (18 U.S.C. § 1964)** to be filed in the **U.S. District Court for the District of Rhode Island (First Circuit).**

These forthcoming RICO claims are expected to establish among other revelations:

- Fraudulent transfer and concealment of assets, as established in allegations made by the Frank Lloyd Wright Building Conservancy in underlying presently stayed litigation in Oklahoma's 11th Judicial District;
- Failure to register foreign corporations transacting business in the US State of Rhode Island as referenced by the debtor in providing multiple creditors listed to a colloquial village name and address in a tiny Rhode Island community;
- Failure of Non-profit(s) to register in the US State of Rhode Island pursuant with Rhode Island state statute
- Selective allocation of debts to Copper Tree Inc. and Green Copper Holdings LLC to shield perpetrators of at least two or more malfeasances covered under RICO laws of the State of Rhode Island
- Potential violations tied to the financial misconduct of HeraSoft, Anthem Vault, Anthem Holdings and affiliated entities;

- Corporate veil piercing based on fraudulent activities impacting creditors and interested parties, and directed threats of violence regarding insinuations made due to the death of a whistleblower in another case wherein a creditor to this action was previously charged by the Florida Department of Law Enforcement with criminal racketeering, wherein those charges were dismissed when several days after that creditors arrest the WHISTLEBLOWER in that case was discovered DEAD!  The death of that whistleblower has previously been ruled a HOMICIDE, for which a person was lawfully convicted.
- Information transmitted to to the undersigned by concerned citizens of Bartlesville Oklahoma who are threatened by the debtor control person and fear for their physical safety by persons associated directly to the debtors, the fear of retaliation has been printed in GANNETT news media
- Individuals who have transmitted direct physical threats into the State of Rhode Island and now based upon new information of close proximity addresses listed in the Bankruptcy filing presumably supplied by the Debtor signed by Cynthia D. Blanchard as to being true and correct under penalties of perjury
- The attorney of record for GLOBAL ENTERPRISE LOGISTICS has stated it was the legal obligation of the debtor to provide the last known address where the debtor had transacted business with each known creditor
- Multiple individuals have previously stated they fear RETALIATION for speaking out regarding the issues involved in these bankruptcies as well documented by US Public Media conglomerate (GCI) GANNETT news media reporter(s).
- GLOBAL ENTERPRISE LOGISTICS is not registered as a domestic nor foreign operating entity in the State of Rhode Island, and if at some future date registered with retroactive payments of all foreign registration fees and costs with penalties the address used presumably would not be the 1822 village name as listed by rather the lawful name of the Township located within the historic region known as Washington County.

## 4. RESERVATION OF RIGHTS

The Undersigned expressly reserves all rights, including but not limited to:

- The right to challenge jurisdiction;
- The right to seek discovery and disclosure of fraudulent transfers;
- The right to pursue all available legal remedies under U.S. bankruptcy and civil &/or criminal fraud statutes.
- The right to challenge venue and jurisdiction
- The right to be protected against further acts of intimidation and/or threats of violence including any further insinuations of the undersigned meeting a similar fate to the DEAD WHISTLEBLOWER in the criminal racketeering case brought against one of the creditors to this bankruptcy for which the appearing attorney for GLOBAL ENTERPRISE LOGISTICS has stated to the effect:
  - **'that must be pretty scary … all these scary things for you and your elderly parents … '**

WHEREFORE, **the undersigned** respectfully prays and requests that the Court, the Clerk, and all parties in interest take notice of this filing and provide service of all pleadings, orders, notices, and other documents filed in the above-captioned bankruptcy proceedings.

WHEREFORE, due to foreign location the undersigned hereby requests extension of time to make responses and filings under this notice and **request for leave to file extension** by filing a **Motion for Extension of Time** under **FRBP 9006(b)**.

WHEREFORE either with leave to file under FRBP 9006(b) and/or as foreign domiciled interested party **should receive additional time** to respond to filings in a U.S. bankruptcy case, **either the automatic application of Rule 9006(f) or by court order as herein requested leave to file under Rule 9006(b)**

WHEREFORE, while typical response should be had via electronic service in email under Rule 9006(f), due to the unique legal environment of the State of Oklahoma and the weaponization of the County Courts of Oklahoma by ANTHEM HAYEK BLANCHARD and CYNTHIA DIANE BLANCHARD and previous Court Orders of the District Court of Washington County Oklahoma the undersigned is unable to receive or send electronic mail into any governmental officials of involved in either the US Federal Government or the State Government of Oklahoma, without subjecting the undersigned to unlawful detainment and imprisonment.

## FORMAL NOTICE OF JURISDICTIONAL HAZARDS, CONFLICTS OF INTEREST, AND REQUEST FOR JUDICIAL SCRUTINY OF ATTORNEY INVOLVEMENT IN BANKRUPTCY MATTERS

The undersigned is subject to extreme and retaliatory legal peril should electronic communication, whether received or transmitted, be directed into the State of Oklahoma, where such action has historically resulted in unlawful imprisonment, physical violence, and attempts on the undersigned's life. This assertion is not speculative but rather corroborated by sworn testimony from the City Manager of Bartlesville, Oklahoma, Michael Bailey, regarding an electronic mail communication sent by the undersigned in an effort to express concerns regarding the City of Bartlesville and to seek legal consultation with attorneys, including City Attorney JESS KANE.

A document filed pro se is "to be liberally construed," Estelle, 429 U.S. "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice"). "filings generously and with the leniency due pro se litigants", see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).

FURTHERMORE let it be known:
**Key Precedents Illustrating Liberal Construction of Pro Se Filings:**

1. **Robertson v. Intratek Computer, Inc. (10th Cir. 2019):**

- **Citation:** *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 580 (10th Cir. 2019).

2. **Jackson v. Lightsey (4th Cir. 2014):**

   - **Summary:** The Fourth Circuit reiterated that pro se pleadings are entitled to a liberal construction to facilitate a fair assessment of the claims presented.
   - **Citation:** *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

3. **Yang v. Archuleta (10th Cir. 2008):**

   - **Summary:** The Tenth Circuit emphasized that while pro se filings should be liberally construed, this does not extend to the court acting as an advocate for the pro se party.
   - **Citation:** *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

## FORMAL DECLARATION AND ASSERTION OF LEGAL POSITION BY PRO SE INTERESTED PARTY

The undersigned, appearing in this matter as an **interested party**, does not seek nor request that the **United States Federal Bankruptcy Court** act as an advocate, champion, or proponent of the undersigned's legal position, nor is the undersigned making any demand that the Court engage in any preferential adjudication on behalf of any self-represented litigant. Instead, the undersigned **invokes the fundamental principles of justice, equity, and procedural fairness**, requesting only that the Court, in the **interests of substantial justice**, ensure full transparency, comprehensive disclosure, and absolute procedural integrity within the **public docket** of this bankruptcy action.

The undersigned further asserts that the necessity of such judicial cognizance is **imperative and nontrivial**, given the **substantial, direct, and incontrovertible prima facie evidentiary submissions** now contained within the filings, which establish irrefutable **jurisdictional ties and material connections** between this proceeding and the **State of Rhode Island**. More critically, these filings **implicate entities and individuals who are, upon information and belief, operating in extreme geographic proximity** to the **retirement residence of the undersigned's elderly parents**—whose personal safety, well-being, and fundamental privacy rights have been **egregiously and unlawfully compromised** through **intentional, unauthorized, and malevolent acts of doxxing.**

The undersigned has direct and reasonable cause to believe that said **doxxing and extrajudicial disclosures** were **orchestrated, enabled, and executed through illicit and highly unethical conduct** on the part of multiple **licensed attorneys**, and perhaps Judicial Officers in violation of FEDERAL LAW and that such misconduct extends to **judicial officers acting beyond their lawful scope of authority**. Specifically, the **physical residential address of the undersigned's elderly parents** was **maliciously and unlawfully disclosed—in direct**

violation of federal law—by none other than **Judge Russell Coleman Vaclaw**, presiding over the **District Court of Washington County, State of Oklahoma, within the 11th Judicial District of Oklahoma, presiding over multiple civil cases directly related to these proceedings in the Northern District of Oklahoma Bankruptcy Court**.

Furthermore, predicated upon the corpus of presently available intelligence and a meticulous examination of the solemnly attested submissions tendered within this bankruptcy proceeding, the undersigned unequivocally contends that a constellation of purported creditors—comprising both interrelated individuals and illicitly constituted legal entities—have surreptitiously infiltrated the record. However, upon rigorous scrutiny, these entities manifest as juridical phantoms, bereft of requisite statutory legitimacy under the authoritative registry of the Rhode Island Secretary of State. This egregious deficiency engenders grave and irrefutable concerns regarding the authenticity, standing, and veracity of the creditor assertions proffered before this tribunal.

The undersigned, with the full force of federal jurisprudence, constitutional bulwarks, and inviolable procedural due process, hereby reserves all rights, privileges, and affirmative defenses afforded under the expansive canopy of statutory and common law. This includes, but is not circumscribed to, the unequivocal prerogative to seek redress for transgressions perpetrated against fundamental legal protections, particularly in response to malfeasance, dereliction, or calculated bad-faith machinations undertaken by judicial functionaries, legal practitioners, or corporate malefactors seeking to exploit these proceedings for nefarious gain.

Moreover, the undersigned avers, with utmost gravity, that an exigency of unparalleled magnitude exists within the corpus of filed pleadings and the precipitous liquidation of assets bearing incalculable cultural, historical, and communal significance. This extends to artifacts of irreplaceable provenance, museum exhibits of profound national import, and other vestiges of historical patrimony, which must be safeguarded against wanton dissipation. The undersigned further underscores that this exigency is compounded by an atmosphere of palpable trepidation—an apprehension so pervasive that it has been explicitly chronicled in Gannett media publications, wherein individuals, paralyzed by the specter of retaliation, have articulated a profound and justifiable fear of speaking out against the obliteration of national heritage.

Respectfully submitted,

Michael Nelson - Pro Se (Pro Per)

Interested Party

## CERTIFICATE OF SERVICE AND FORMAL DECLARATION OF RESTRICTED DISCLOSURE

### IN THE MATTER OF JUDICIAL NOTICE AND PROCEDURAL ASSERTION OF RESTRICTIVE NON-DISSEMINATION MANDATES

WHEREAS, in strict adherence to the prevailing corpus of procedural jurisprudence, statutory imperatives, and doctrinal maxims enshrining the sacrosanct principles of procedural due process and equitable notice, the undersigned, acting in an abundance of caution and in full cognizance of binding jurisdictional predicates, hereby certifies that effectuate service of the foregoing instrument has been executed in conformity with the prevailing mandates of statutory law, codified procedural governance, and applicable adjudicatory directives.

NOTWITHSTANDING, in recognition of extrajudicial anomalies, convoluted procedural exigencies, and the demonstrable tactical exploitation of statutory architecture heretofore executed with artifice and calculated intent, it is hereby formally, unequivocally, and incontrovertibly noticed that the subject filing—individually, severally, and in the aggregate—shall not, under any conceivable construction, legal fiction, interpretative lens, or attenuated inference, be conveyed, transmitted, promulgated, or otherwise disseminated in any form, manner, or medium—whether directly, derivatively, incidentally, or by operation of constructive notice—to the individual personage of **Chad Mitchell Koehn**, aka Chad Koehn, C. Mitch Koehn, Chad M. Koehn, Chad Mitchell K., Chad Mitch K, Chad Koehn Mitchell, Chad Mitchel Koehn or any other derivative he may use nor to any juridical entity, corporate enterprise, organizational consortium, trust arrangement, professional association, individual, attorney, consort, person, associate, employee or extrinsic affiliate with whom Chad M. Koehn maintains, has maintained, or is reasonably deduced to have maintained any contractual nexus, fiduciary entanglement, agency affiliation, governance role, or informal economic coalescence.

Said prophylactic restriction is predicated upon the putative existence of an adjudicatory directive, the precise linguistic contours and jurisdictional breadth of which remain presently indeterminate, but which is purported to have been issued **sub silentio** by the Honorable **Judge Paul J. Hickman** of the Saline County District Court, Kansas, who Chad Mitchell Koehn has claimed is "in his pocket". Furthermore, it is duly observed and reasonably inferred that Chad M.

Koehn, through ostensible legal representation purportedly marshaled by the individual known as **Craig Alan Brand**, has strategically invoked and instrumentally weaponized the statutory construct embodied within the **Violence Against Women Act (VAWA)** before the tribunals of the Saline County judicial apparatus. The invocation of said statutory framework—visibly mirroring an antecedent maneuver orchestrated by **Cynthia D. Blanchard**, aka Cynthia Diane French, Cynthia D. French, Cynthia Blanchard, Cynthia D. French-Blanchard or Cynthia D. Blanchard-French or any other combination or other used alias of Cynthia Blanchard who claims a domicile in Bartlesville, Oklahoma, among many other jurisdictions including without limitation Las Vegas, Nevada, Houston Texas, Grand Cayman Islands, Sao Paulo, Brazil, and/or a documented control person of the debtor entity—exhibits an unmistakable congruence with prior strategic legal deployments effectuated before the Honorable **Judge Russell Coleman Vaclaw** of the District Court of Washington County, Oklahoma of the 11th Judicial District.  Said purposeful legal entanglements brought by Cynthia Blanchard were done without justification nor legal jurisdiction and have and continues to cause extreme DOXING of the elderly parents of the undersigned without cause nor justification and in direct contravention of established FEDERAL LAW.

Upon the totality of these factual predicates, and in view of the interwoven procedural stratagems herein delineated, it is reasonably deduced, upon information and belief, that the **coordinated procedural manipulations and adjudicatory exploitations** allegedly executed by **Chad M. Koehn and Cynthia D. Blanchard** are not isolated acts of legal maneuvering but, rather, integral components of a **deliberately engineered Strategic Lawsuit Against Public Participation (SLAPP)**— and a knowingly dangerous violations of Federal Law aimed to strike fear and unjustifiable manipulations in the stripping and denial of constitutional rights to the undersigned.  Such juridically pernicious and constitutionally suspect litigation modality designed with **pretextual artifice** to subjugate, deter, and preclude the exercise of legally protected disclosures, to obstruct the unfettered function of regulatory enforcement mechanisms, and to interfere with statutorily enshrined channels of lawful communication to federal oversight authorities, including without limitation Federal Law Enforcement in direction and absolute violation and refutation of the SEC rule 21F-17 a, amongst other US regulatory and Federal laws which mandate the protection of elderly members of society and which are done in sequence by Cynthia Blanchard

working in co-conspirators actions with Chad M. Koehn for the purposes to evade legal liability and consequence for the series of actions they are so liable.

In furtherance of this overarching litigation apparatus, **Craig Alan Brand** is herein identified as an architect and operational executor of this concerted campaign of litigation warfare, having allegedly engaged in systematic procedural machinations designed to effectuate a **deliberate, methodical, and egregious transgression of Securities and Exchange Commission Rule 21F-17(a)**, which, in its unequivocal statutory mandate, proscribes any act, agreement, or procedural construct that, whether directly or tangentially, restricts, impairs, or circumvents an individual's ability to engage in lawful communication with the SEC regarding violations of federal securities laws.

WHEREFORE, the undersigned, in full cognizance of the gravity and jurisdictional implications of the foregoing assertions, **reserves all procedural, statutory, and constitutional prerogatives** available under prevailing federal jurisprudence, including but not limited to the absolute right to seek adjudicatory redress for any and all infractions, violations, or legally cognizable transgressions arising from the conduct herein delineated.  To include without limitation emergency appeal to the Bankruptcy Appealette Board, the emergency notification to the 10th Circuit Court of Appeals and emergency service of UNITED STATES SUPREME COURT RULE 22 Application upon Justice Neil Gorsuch, of the same UNITED STATES SUPREME COURT.

### Grounds for a Rule 22 Application in This Scenario:

1. **Violation of Federal Bankruptcy Laws (11 U.S.C. §§ 363, 1129, etc.)**

   - If the bankruptcy court is **circumventing statutory timeframes** under the **Bankruptcy Code** (e.g., rushing the sale process under 11 U.S.C. § 363 without allowing for adequate notice and objections), an applicant could argue that the court is acting **ultra vires** (beyond its legal authority).
   - The Bankruptcy Code provides specific protections for **notice periods, bidding procedures, and fair market valuation**, which must not be **manipulated to favor a particular buyer** at the expense of creditors or interested parties.

2. **Denial of Due Process (5th and 14th Amendments)**

- If the court is **truncating statutory notice periods** or denying parties the opportunity to be heard, it may violate **procedural due process rights**.
- A party could argue that **the rushed sale process is engineered to exclude competing bidders or suppress objections**, thereby denying an affected party their legal right to contest the sale.

3. **Judicial Misconduct or Collusion**

- If evidence suggests that **the bankruptcy judge is engaging in preferential treatment or colluding with specific buyers**, a Rule 22 application could be justified.
- This could include actions such as:
  - **Waiving or reducing standard creditor objection periods**
  - **Approving sale terms that disproportionately favor an insider or a politically connected entity**
  - **Rejecting higher or competitive bids without justification**

4. **Conflicts with Federal Oversight or SEC Regulations (If Publicly Traded Assets Are Involved)**

- If the bankruptcy case involves a **publicly traded company or assets subject to SEC oversight**, the applicant could argue that the **manipulated sale process interferes with federal regulatory interests**.
- SEC Rule **21F-17(a)** may also apply if whistleblower communications regarding fraud or misconduct in the sale are being suppressed.

5. **Strategic Lawsuit Against Public Participation (SLAPP) to Obstruct Legal Remedies**

- If a **SLAPP-style litigation strategy** is being used to silence objections (e.g., through **frivolous restraining orders or retaliatory lawsuits against objectors**), a Supreme Court justice may be petitioned to intervene.

---

## Potential Emergency Relief Sought Under Rule 22:

- **Stay of the Bankruptcy Sale** until full statutory notice periods are observed.
- **Injunction Against Procedural Manipulation**, preventing the bankruptcy court from unlawfully shortening timeframes.
- **Order Directing Compliance with Federal Law**, ensuring adherence to established **Bankruptcy Code provisions** governing asset sales.

**Jurisdictional and Procedural Considerations:**

- **Exhaustion Requirement:** The applicant would typically need to **seek relief in lower federal courts first**, including the **U.S. District Court (bankruptcy appeals) and the U.S. Court of Appeals**.
- **Extraordinary Circumstances:** A **Rule 22 application is an extraordinary remedy** and would require showing **irreparable harm**, such as:
  - <u>Imminent and irreversible sale of real estate below market value</u>
  - <u>Deprivation of property rights without due process</u>
  - <u>Intentional judicial misconduct or conflicts of interest</u>

A **Rule 22 Application** could be used to seek **emergency Supreme Court intervention** when a **bankruptcy court is unlawfully manipulating time frames to engineer a sale in favor of a specific party**, thereby violating federal law, due process, or fundamental fairness principles. The application would be strongest if it demonstrates **clear statutory violations, evidence of collusion or bias, and irreparable harm absent Supreme Court intervention**.

**Furthermore,** it is noted that Anthem Hayek Blanchard and Anthem Holdings Company have now engaged legal representation under the auspices of attorneys associated with the Center for Individual Rights (CIR), an organization **overseen by General Counsel Michael E. Rosman**. It is of particular legal significance that Mr. Rosman, a seasoned litigator with extensive experience before the federal judiciary, has previously argued numerous cases within the United States Courts of Appeals and successfully presented oral argument before the ***United States Supreme Court in the seminal case of United States v. Morrison, 529 U.S. 598 (2000)***, a landmark ruling that circumscribed congressional authority under the Commerce Clause and the Fourteenth Amendment as it pertained to the civil remedy provisions of VAWA.

Accordingly, this Certificate of Service is hereby entered into the record with the explicit and categorical prohibition against any transmission, distribution, or disclosure of this filing to Chad Mitchell Koehn or any affiliated or associated entity, directly or indirectly, explicitly or impliedly, via any medium, instrumentality, or communicative methodology whatsoever.

## Legal Synopsis: United States v. Morrison, 529 U.S. 598 (2000)

UNITED STATES SUPREME COURT

**Case Overview**

- **Citation:** *United States v. Morrison*, 529 U.S. 598 (2000)
- **Court:** Supreme Court of the United States
- **Argued:** January 11, 2000
- **Decided:** May 15, 2000
- **Vote:** 5-4
- **Majority Opinion:** Chief Justice William Rehnquist
- **Dissenting Opinion:** Justices Souter, Stevens, Ginsburg, and Breyer

**Facts of the Case**

- In 1994, **Christy Brzonkala**, a student at Virginia Polytechnic Institute (Virginia Tech), accused two male students, including **Antonio Morrison**, TONY MORRISON, of raping her.
- Virginia Tech conducted disciplinary proceedings, initially punishing Morrison, but later overturning the punishment.
- Brzonkala then filed a **civil lawsuit** against Morrison under **42 U.S.C. § 13981**, a provision of the **Violence Against Women Act (VAWA) of 1994**, which allowed victims of gender-motivated violence to sue their attackers in federal court.
- Morrison challenged the law, arguing that **Congress exceeded its constitutional authority** by enacting this provision.

**Legal Issues**

1. **Did Congress have the authority under the Commerce Clause (Article I, Section 8) to enact the civil remedy provision of VAWA?**
2. **Did the provision exceed Congress's enforcement powers under the Fourteenth Amendment?**

**Holding (Ruling)**

The Supreme Court **struck down** the VAWA provision, ruling that **Congress lacked the authority** to enact it under both:

1. **The Commerce Clause** – The Court held that gender-motivated violence is **not an economic activity** and does not substantially affect interstate commerce.

2. **The Fourteenth Amendment** – The Court found that the provision improperly regulated **private conduct** rather than state action, exceeding Congress's power under Section 5 of the Fourteenth Amendment.

**Reasoning**

1. **Commerce Clause Limitation**

   o The Court reaffirmed its decision in *United States v. Lopez* (1995), which struck down the Gun-Free School Zones Act.
   o It ruled that Congress may **only regulate economic activities** that substantially affect interstate commerce.
   o Since gender-motivated violence is **not an economic activity**, Congress **could not justify** the law under the Commerce Clause.

2. **Fourteenth Amendment Limitation**

   o The Fourteenth Amendment's Equal Protection Clause applies **only to state actions, not private individuals**.
   o Since the VAWA provision sought to regulate **private individuals** (not state actors), it **exceeded Congress's authority** under the Fourteenth Amendment.

**Key Precedents Referenced**

- *United States v. Lopez*, 514 U.S. 549 (1995) – Limited Congress's Commerce Clause power.
- *City of Boerne v. Flores*, 521 U.S. 507 (1997) – Stated that Congress cannot expand its enforcement powers under the Fourteenth Amendment beyond protecting against state action.

**Impact & Significance**

- The decision **limited the reach of federal power** under the Commerce Clause and the Fourteenth Amendment.
- It set a **precedent restricting Congress's ability** to regulate non-economic criminal behavior at the federal level.
- The ruling shifted responsibility for **gender-based violence laws back to the states**.

## Legal Statement Regarding Chad Koehn's SEX Identity and Court Filings

Upon information and belief, **Chad Koehn** may identify as or otherwise present himself as a female. It is further understood that references to the **Violence Against Women Act (VAWA)** have been made in certain court filings. However, the undersigned is presently without access

to the complete set of said filings, despite having formally requested them from the **Saline County Court, State of Kansas**. The undersigned further attests that, to the best of his knowledge and belief, he has never physically set foot in the State of Kansas.

With respect to **KOEHN (CHAD KOEHN)**, it is upon **information and belief** that he presents in a manner consistent with that of a **large, more than six-foot-tall individual** commonly described as a "rhinestone cowboy," outwardly appearing as **male-gendered**. However, the **undersigned is unable to confirm the legal sex of Chad Koehn**, as no certified birth records or other official documentation explicitly establishing said sex have been identified within publicly available records or within the docketed proceedings of the **United States Federal Courts**. While various pronouns and legal averments have suggested that Chad Koehn is **male**, no definitive legal evidence, such as a **birth certificate or government-issued documentation**, has been located within the public domain to verify this assertion.

The undersigned makes public note, thus requesting JUDICIAL NOTICE of the **Executive Order of the PRESIDENT OF THE UNITED STATES OF AMERICA:**

**DONALD JOHN TRUMP in Executive Order 14168;** titled:

"DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT"

https://public-inspection.federalregister.gov/2025-02090.pdf

SEE GENERALLY pages 2 and 3:

Sec. 2.

> Policy and Definitions. It is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality. Under my direction, the Executive Branch will enforce all sex-protective laws to promote this reality, and the following definitions shall govern all Executive interpretation of and application of Federal law and administration policy: (a) "Sex" shall refer to an individual's immutable biological classification as either male or female. "Sex" is not a synonym for and does not include the concept of "gender identity." (b) "Women" or "woman" and "girls" or "girl" shall mean adult and juvenile human females, respectively. (c) "Men" or "man" and "boys" or "boy" shall mean adult and juvenile human males, respectively. (d) "Female" means a person belonging, at conception, to the sex that produces the large reproductive cell. (e) "Male" means a person belonging, at conception, to the sex that produces the small reproductive cell. (f) "Gender ideology" replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and thus become women and vice versa, and requiring all institutions of society to regard this false claim as true. Gender ideology includes the idea that there is a vast spectrum of genders that are disconnected from one's sex. Gender ideology is internally inconsistent, in that it diminishes sex as an identifiable or useful category but nevertheless maintains

that it is possible for a person to be born in the wrong sexed body. (g) "Gender identity" reflects a fully internal and subjective sense of self, disconnected from biological reality and sex and existing on an infinite continuum, that does not provide a meaningful basis for identification and cannot be recognized as a replacement for sex.

**Legal Declaration Regarding the Relationship Between the Undersigned and Chad Koehn**

Irrespective of any legal or factual determination regarding the **recognized sex or gender identity** of Chad Koehn, whether it is adjudicated, established, or otherwise asserted that **Koehn is male, female, or any other legally recognized classification**, the undersigned **unequivocally affirms** and attests as follows:

The undersigned has **never engaged in any sexual, romantic, or intimate relationship** with **Chad Koehn** at any point in time. Furthermore, the undersigned has **never shared parentage, legal guardianship, or any biological relation** with any child in common with **Chad Koehn**, nor has the undersigned ever cohabitated, maintained a domestic relationship, or shared any legally cognizable **"thing of value"** with **Chad Koehn**.

The undersigned expressly repudiates, denies, and refutes **any and all allegations, claims, or representations**—whether made by **Chad Koehn** in any **county, state, or federal court**—that suggest or purport the existence of any **child, joint residence, romantic entanglement, or other legally significant relationship** between the undersigned and **Chad Koehn**. Any such assertions, whether **misconstrued, fabricated, delusional, or otherwise falsely averred**, are categorically **false, misleading, and without factual or legal basis**.

FURTHER See Page 3 of the Referenced Executive Order; made by PRESIDENT of these THE UNITED STATES OF AMERICA:  **DONALD JOHN TRUMP in Executive Order 14168;** titled:

"DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT"

https://public-inspection.federalregister.gov/2025-02090.pdf

**Sec. 3.**

"Recognizing Women Are Biologically Distinct From Men. (a) Within 30 days of the date of this order, the Secretary of Health and Human Services shall provide to the U.S. Government, external partners, and the public clear guidance expanding on the sex-based definitions set forth in this order. (b) Each agency and all Federal employees shall enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes. Each agency should therefore give the terms "sex", "male", "female", "men", "women", "boys" and "girls" the meanings set forth in section 2 of this order when interpreting or applying statutes, regulations, or guidance and in all other official agency business, documents,

and communications. (c) When administering or enforcing sex-based distinctions, every agency and all Federal employees acting in an official capacity on behalf of their agency shall use the term "sex" and not "gender" in all applicable Federal policies and documents."

## Formal Entry of Appearance and Notice to All Parties

Let it be hereby formally noticed, advised, and acknowledged by all recipients of this legal notification that the **undersigned** makes this **entry of appearance** as an **interested party** pursuant to the applicable **rules, regulations, statutory provisions, and procedural mandates** governing these proceedings. Said appearance is made without **divulging, conceding, or directly affirming** any prior, existing, or underlying **relationship, connection, or affiliation** with **CHAD M. KOEHN** in any legal, financial, contractual, or extrajudicial capacity.

The **undersigned** shall, in due course and by separate submission, **tender and file** before the **United States Federal Bankruptcy Court and subsequently to the UNITED STATES SUPREME COURT** a copy of the **settlement agreement** executed in connection with prior litigation involving the following **legal entities and individuals**:

1. **UNITED CAPITAL MANAGEMENT OF KANSAS INC.,**
2. **CHAD M. KOEHN**, & associates and
3. **The undersigned.**

It is further acknowledged and asserted that **CHAD M. KOEHN** and **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**—the latter having been previously recognized by the **State of Kansas** under the stylized corporate designation **"UNITEDCAPITALMANAGEMENTOFKANSASINC."**—have entered into a **contractual agreement** with the undersigned. Said agreement **explicitly prohibits** the undersigned from engaging in **communications, disclosures, or reporting** with the **Securities and Exchange Commission (SEC)** regarding any matters pertaining to **potential securities fraud, regulatory violations, financial malfeasance, corporate misconduct, or other violations of federal securities laws** allegedly perpetrated by **CHAD M. KOEHN** and/or **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**

The aforementioned prohibition stands in **direct contravention** of **Securities and Exchange Commission Rule 21F-17(a)**, which **expressly forbids** any contractual or extrajudicial restriction that impairs, obstructs, or precludes an individual's right to **directly communicate** with the **SEC** regarding potential violations of the **Securities Exchange Act of 1934**, the **Dodd-Frank Wall Street Reform and Consumer Protection Act**, or any other applicable securities regulations.

Accordingly, the **undersigned** places this formal notice on the record to underscore the existence of a **legally questionable** and **potentially unenforceable restriction** imposed by **CHAD M. KOEHN** and **UNITED CAPITAL MANAGEMENT OF KANSAS INC.**, which **stands in conflict with federal law, public policy, and SEC-mandated whistleblower protections**.

**Formal Legal Notice and Comprehensive Disclaimer of Communication with Any Affiliated Party of Chad M. Koehn, including towit Mike Moran, Dale Takio and/or Craig Alan Brand and/or Cynthia D. Blanchard**

In recognition of and with a heightened awareness of the **extraordinary and egregiously unlawful deprivation of liberty** previously suffered by the undersigned—wherein the undersigned endured an **unjustified, protracted, and perilously hazardous period of incarceration** within a **high-risk correctional facility** situated in **Newark, New Jersey**—the undersigned, exercising an **abundance of caution, heightened diligence, and unequivocal legal prudence, hereby submits and formally asserts the following legal declaration, disclaimer, and notice to all entities, individuals, and persons in receipt of this filing or otherwise privy to its content:**

1. The **undersigned explicitly and categorically repudiates, disclaims, and negates** any suggestion, implication, or inference that the undersigned has engaged in, is engaging in, or shall in any future capacity engage in **direct, indirect, incidental, or implied communication, transmission, discourse, correspondence, interaction, or any form of contact**—whether \*\*oral, written, electronic, digital, personal, constructive, substantive, ancillary, or otherwise—**with any individual, corporation, entity, association, governmental subdivision, limited liability company, trust, partnership, fiduciary, agent, officer, employee, contractor, affiliate, subsidiary, parent entity, or legal representative that is, was, or may in any capacity be affiliated, connected, associated, or otherwise** related to **Chad M. Koehn**, either personally, professionally, financially, legally, or extrajudicially.

2. The **electronic submission and filing of the instant legal notice, document, or other court-related material** has been **conducted exclusively via the PACER (Public Access to Court Electronic Records) system**, an official **United States Federal Judiciary platform** designated for the lawful and regulated submission of filings before the **United States Federal Bankruptcy Court**.

3. Any and all notifications, advisories, procedural transmissions, or legal correspondences that are the result of, incidental to, or arising from the **electronic submission of the instant filing within the PACER system** shall be deemed to constitute **notifications effectuated solely and exclusively by the United States Federal Bankruptcy Court itself**, pursuant to the **Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court**, and any relevant federal statutory provisions governing electronic service of process, notifications to creditors, and legal notice

procedures in bankruptcy matters.

4.  The **undersigned disavows, disclaims, and negates any and all assertion, implication, or supposition** that the undersigned has initiated, solicited, facilitated, attempted, or otherwise engaged in **any form of direct or indirect interaction, discussion, or communication**—whether voluntary, involuntary, constructive, or otherwise—with any entity or individual **falling within the orbit of Chad M. Koehn's personal, professional, corporate, financial, fiduciary, or legal sphere of influence, involvement, or association. The undersigned is prohibited under coercion and threat of legal armageddon against the undersigned's elderly mother if the SEC or any other Federal regulatory authority or law enforcement entity is provided information regarding the large scale alleged ponzi scheme and/or money laundering activities involving CHAD M. KOEHN and his alleged co-conspirators and therefore this statement of interested party status pursuant with the rights under the Bankruptcy Code is explicitly filed without authorization to be given in any way to a member of the Federal Law Enforcement Community, the SEC, CFTC, IRS, FTC, FinCEN or other regulatory authority having obligations of regulatory oversight over Chad M. Koehn and/or his co-conspirators.**

5.  Insofar as any individual, legal entity, judicial officer, administrative body, creditor, claimant, or party in interest **receives notice of the instant filing, its contents, or any procedural advisement emanating from its submission**, such notice shall be deemed to have been made **by and through the formal ministerial functions of the United States Federal Bankruptcy Court itself**, not by the undersigned personally, **indirectly, incidentally, or by any other construct or legal fiction that would purport to impute communication to the undersigned.**

6.  The **undersigned reserves all rights, privileges, defenses, and immunities** afforded under the **United States Constitution, federal statutory law, common law doctrines, bankruptcy code provisions, judicial precedents, procedural safeguards, and equitable principles to preclude, reject, negate, and oppose** any and all mischaracterizations, erroneous inferences, wrongful interpretations, malicious distortions, or unfounded presumptions that would **suggest, insinuate, or falsely ascribe** any communicative act, participatory engagement, or intentional interaction by the undersigned with **Chad M. Koehn or any affiliated entity, organization, or person.**

Accordingly, all **creditors, claimants, parties in interest, government agencies, regulatory bodies, and legal representatives** are hereby formally placed on notice of the aforementioned assertions, reservations, disclaimers, and protections governing the legal position and conduct of the **undersigned** with respect to the instant matter and any peripheral proceedings related thereto.

When filed to the US Federal Court this filing will be automatically sent to the parties of record pursuant with the Federal Court's automatic notification systems.



Michael Eric Nelson
Care of the United States Secretary of State for foreign location re-routing.
702.932.3434

Email only to be used after pre-notification as to email address sending documents from in order to have the address authorized to receive said notices: michaelericnelson @ilcoud.com *

The undersigned, as identified hereinabove, is presently under an **imminent and substantiated, threat of lethal harm** from multiple individuals, necessitating immediate and continuous concealment alongside multiple family members. Consequently, the undersigned **lacks a fixed, verifiable residential address** and is actively employing **military-grade Onion Routing technology** to obscure locational data and prevent assassination, grievous bodily harm, or other malicious acts. These threats are credibly linked to individuals associated with **ANTHEM HAYEK BLANCHARD** and **CYNTHIA DIANE FRENCH**, also known as **CYNTHIA DIANE BLANCHARD**, whose direct or indirect involvement has rendered traditional security measures insufficient. Accordingly, the undersigned is currently located at an **undisclosed overseas foreign-domiciled location** to further mitigate the risk of imminent harm.